**WALDO ROHNERT CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 17803.**

United States Court of Appeals
Ninth Circuit.

Aug. 28, 1963.

George O. Bahrs and R. J. Scolnik, San Francisco, Cal., for petitioner.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., and Peter Giesey, Attys., N. L. R. B., Washington, D. C., for respondent.

Before HAMLIN and DUNIWAY, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

The respondent, National Labor Relations Board, ordered petitioner, Waldo Rohnert Co., a corporation, to upon request bargain collectively with Rohnert's seed mill employees' Union (the long-named local numbered 287, affiliated with the Teamsters) and to post the usual notices and to cease and desist from unfair labor practices as required by § 8(a)(5) and (1), and from interfering with seed mill employees' exercise of their rights under § 7, of the Labor Management Relations Act, 1947 (29 U.S.C. § 158(a)(5) and (1), and § 157). Now petitioning this Court to review and set aside the Board's order, Rohnert contends that its seed mill employees affected by the order are all agricultural laborers and as such are by the combined effect of § 203(f), 29 U.S.C., and § 152(3), id., exempted from § 8(a)(5) and (1) and § 7 of said Act, and that the Board denied Rohnert due process of law by acting on facts outside the record.

The Board contends that the Courts have construed said § 203(f) as not exempting those processing plant employees whose work is done on products of farmers other than those owning the processing plants at which the employees are employed, that 75% of the seed processed at Rohnert's mill is grown by farmers pursuant to contract with Rohnert, and that in order to show qualification for agricultural worker exemption for its seed mill employees, Rohnert must show that substantially all the seed mill work is incident to the farming operations of Rohnert, which, the Board argues, has not been done in this case.

This Court has jurisdiction under 29 U.S.C. § 160(f).

In Case No. 20–CA–2139 here under review, the Board found that Rohnert violated § 8(a)(5) and (1) by refusing to bargain with the Union pursuant to its

certified right to bargain for Rohnert's employees at its Hollister, California seed processing mill. That certification resulted on September 25, 1961 from a petition filed by the Union on March 29, 1961, followed by a hearing April 27, 1961, a Board decision and direction of election made August 17, 1961, and a September 15, 1961 election which gave to the Union a majority of the votes cast. Thereupon and pursuant to said September 25, 1961 certification, the Union on September 29, 1961 requested recognition for collective bargaining which was on October 5, 1961 refused by Rohnert on the asserted ground that the milling activities were within the agricultural exemption of §§ 203(f) and 152(3).

The Union on October 9, 1961 filed unfair labor practice charges against Rohnert, a complaint was on October 20, 1961 noted by the Board, and an answer was filed by Rohnert on October 26, 1961. The parties by stipulation waived hearing before a Trial Examiner, and agreed that those charges, the complaint, the answer and the stipulation which had incorporated in it by reference the records in two prior Board proceedings (20–RC–4563, the unreported 1961 election proceeding, and the Board's 1958 decision in its election proceeding 20–RC–3388 reported in 120 NLRB 153 also resulting in certification of the Union) should constitute the entire record before the Board in this proceeding now under review in this Court.

Rohnert is a family corporation which in addition to its seed milling operation grows primarily vegetable seed crops on land leased from family members. Also Rohnert through seed contracts with other farmers arranges with them to grow vegetable seed crops on their own irrigated lands and for the most part with their own labor and equipment. Under those contracts Rohnert furnishes the planting seeds for the seed crops, retains legal title to the growing plants and seeds and controls and supervises the farming operations, and in some instances provides harvesting machines, but in case of crop failure or under-grade seed yield, the seed contract growers are liable for the planting seed at an agreed rate per 100 lbs. Growers are paid on the basis of the number of pounds of acceptable seed produced.

Under the seed contracts Rohnert acquires no interest in the land, but supplies the planting seeds, and is given the right to and does supervise the planting, inspects the growing crops, does all roguing (removing undesirable plants) and decides when to irrigate (with the landowners' water), when to weed, spray and finally when to harvest. Rohnert provides harvesting equipment such as canvas seed drying sheets and loading bins, which bins when filled with crop seed are trucked by Rohnert to its Hollister seed mill. There the seed is weighed, machine cleaned, graded, sacked, stored and eventually shipped to wholesale buyers and jobbers.

While Rohnert's employees as above noted do some of the seed contract grower's work, most of it is supervisory. They do not take over and do the work of cultivating and growing the crops. In the performance of the seed contracts, the grower remains owner and proprietor of all interests in the land and is responsible for the cultivation and growing of the seed crops. The seed contract grower receives no compensation under the seed contract for any crop seed which is not as to quality and grade accepted by Rohnert "as acceptable merchantable seed", and the grower has to pay Rohnert for any planting seed supplied by it if the planting seed fails to produce a crop or produces under-grade crop seed.

The only direct evidentiary support in the seed contracts for the farmer status claim of Rohnert is the contract provision reserving to Rohnert title to the planting seed and its offspring plants germinated and grown from the seed supplied by Rohnert under those contracts. But as such evidence, it is in its effect destroyed by the conflicting contract provision that the grower will pay Rohnert for the loss of planting seed from crop failure and under-grade seed, a result strongly supporting the Board's deter-

mination that in effect the seed milling operation is a commercial not a farming enterprise, and that Rohnert's seed mill employees are not exempt as agricultural laborers from the provisions of § 8(a) (5) and (1) and § 7. That determination is supported by further substantial evidence from the Rohnert manager that in effect 75% of the seed processed in the Rohnert mill is grown by the seed contract farmers. Additional similar support may be found in the fact that although the seed mill employees do some farm work the greater portion of their work time is applied to the seed mill operation, and the fact that the total expenses of the mill's 1961 (the last year under review) operations amounted to about $100,000.00.

In addition to its objections noted above, Rohnert contends that the Board never decided this case on the merits, but instead disposed of it only upon the authority of the Columbiana Seed Co. case, 119 NLRB 560, which, says Rohnert, was decided by the Board upon the basis of "administrative advice" from the Department of Labor. In that connection, we think Rohnert overlooks the important facts that in the proceedings before the Board in this case, not only was it the third time the same two specific questions whether (1) Rohnert's seed mill operation was incidental farming practice and (2) whether the mill employees were exempt as farm laborers from NLRB action had been submitted to the Board, but that in the two prior proceedings the Board has decided against Rohnert's contentions on those two issues. Those two issues have been and are the simple essential final factual issues in all three proceedings. In the prior proceedings, Rohnert was informed and well aware of the identity of those issues as reflected by its own words:

"Petitioner (Rohnert) took the position that these employees were agricultural employees and were, therefore, exempt from coverage of the Act * * *

"Petitioner (Rohnert) declined to recognize the Union or to negotiate, intending to have the issue of whether the employees were agricultural employees resolved by this Court. * * * " [1] (Parentheses added.)

By stipulation filed with the Board, this case was submitted to the Board upon the unfair labor practice charges, the complaint, Rohnert's answer and that stipulation with its incorporated records of the two prior Board proceedings, all of which the parties agreed would constitute the entire record before the Board in this case, and that record is now properly before this Court. Rohnert's answer to the complaint before the Board in this case expressly alleged that the seed mill employees were exempt as agricultural laborers, and the Board, by reason of the similarity between the facts of Columbiana Seed Co., supra, and those in this case, concluded that the seed mill employees respecting their seed mill work are not agricultural laborers and are subject to the NLRA. The Board thereby decided all the essential factual issues in this case upon consideration of the record approved by petitioner and the Board, and in so doing accorded petitioner due process of law.

In considering whether under the foregoing facts Rohnert's seed mill employees were as Rohnert contends agricultural laborers and not subject to the National Labor Relations Act, we quote from Mitchell v. Hunt, 5 Cir., 263 F.2d 913, 917, a § 203(f) Fair Labor Standards Act case, what there was said of a farmer:

"To bring himself within the exception, the appellee (farmer) must prove that not merely some but substantially all of the farming operations to which the practices are incident were operations of the appellee farmer himself." (Parenthesis added.)

The language just quoted concerned § 203(f), 29 U.S.C., which is a part of the Fair Labor Standards Act, but the ju-

1. See Petitioner Rohnert's brief pages 5–6.

dicial interpretation of that Section in the Fair Labor Standards Act has been applied in NLRB cases because § 152(3), 29 U.S.C., the National Labor Relations Act, provides that

"* * * the term 'employee' * * * shall not include any individual employed as an agricultural laborer * * *."

The Congress has for a number of years added a rider to the appropriation for the NLRB reciting that none of the funds

"shall be * * * used in connection with investigations * * * concerning bargaining units composed of agricultural laborers as referred to in § 3(f)"

of the Fair Labor Standards Act (29 U.S.C. § 203(f)). N.L.R.B. v. Olaa Sugar Company, (9 Cir.), 242 F.2d 714, 715.

In the Fair Labor Standards Act case of Mitchell v. Huntsville Wholesale Nurseries (5 Cir.), 267 F.2d 286, at page 290, on facts very similar to those in this case, especially as to the crop growing contract, it was held that

"Although Huntsville is a farmer to the extent that it operates Gladstone Farm and has nursery stock growing on the Fraser Place, this is not sufficient to exempt the employees at the Canal Street warehouse, employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock received from other sources. * * *

"Thus processing on a farm of commodities produced by other farmers is incidental to, or in conjunction with, the farming operation of the other farmers and not incidental to, or in conjunction with, farming operations of the farmers on whose premises the processing is done. Such processing is therefore not within the definition of agriculture."

We think the Board was correct in holding that the seed mill employees as to their work at the mill were not as agricultural laborers exempt from the provisions of the National Labor Relations Act, and in ordering collective bargaining for them.

Petitioner Rohnert's petition is denied.

The Board's order will be ENFORCED.